<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JANE DOE (M.J.J.),<br><br>      Plaintiff,<br><br>v.<br><br>WYNDHAM HOTELS & RESORTS, INC. *et al.*,<br><br>      Defendants. | Civil Action No: 24-6490 (SDW) (JRA)<br><br>**OPINION**<br><br>January 30, 2025 |

**WIGENTON**, District Judge.

Before this Court is Defendants Wyndham Hotels & Resorts, Inc., LQ Management L.L.C., La Quinta Franchising, LLC, and La Quinta Holdings Inc.'s (the "moving Defendants")[1] motion to dismiss (D.E. 18) Plaintiff Jane Doe (M.J.J.)'s complaint (D.E. 1 ("Compl.")).  Jurisdiction is proper pursuant to 28 U.S.C. § 1331.  This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons stated herein, the motion to dismiss is **DENIED**.

  **I.**  <u>**FACTUAL BACKGROUND**</u>

Plaintiff alleges that from January 1, 2010 to May 28, 2014, she was repeatedly sex trafficked at two Wyndham hotels in San Bernardino, California (the "subject hotels")—a Super 8 located at 225 E. Hospitality Lane (the "Subject Super 8"), and a La Quinta located at 205 E.

---

[1] Plaintiff uses the term "Wyndham Defendants" to collectively refer to the moving Defendants and Super 8 Management, Inc.  (Compl. ¶ 17.)  According to the moving Defendants, there is no entity named Super 8 Management, Inc. "affiliated with … the ultimate parent company of the franchisors that license the Super 8® (and La Quinta®) trade names and service marks."  (D.E. 18-1 at 1 n.1.)

1

Hospitality Lane (the "subject La Quinta").  (Compl. ¶ 26.)  She states that several trafficking victims had been exploited at the subject hotels before her, and that there were "evident and apparent signs of widespread and ongoing sex trafficking in these hotels."  (*Id.* at ¶¶ 6, 28, 53.)

According to the complaint, the moving Defendants "knew about [the] widespread and ongoing trafficking at these Wyndham locations, including the trafficking of [Plaintiff], through the direct observations of hotel staff, including management-level staff."  (*Id.* at ¶ 54.)  Plaintiff alleges the following as obvious signs of her being sex trafficked: "[t]he hotel rooms in which she was trafficked were frequently paid for with cash or prepaid cards," other victims "were trafficked at the same hotel at the same time as [Plaintiff]," her "traffickers were often present with [her] at check in and would linger around the hotel or in the parking lot while she was with a john," "[t]here was heavy foot traffic in and out of [Plaintiff's] room involving men who were not hotel guests," and hotel staff were kept out of the room by use of the "Do Not Disturb" sign, preventing them from providing "regular cleaning, towel exchange and other standard room services."  (*Id.* at ¶ 57.)  She alleges having at least ten johns every day, who "entered and left at unusual hours and were present at the hotel for brief periods of time."  (*Id.*)  Plaintiff also cites several online reviews of the subject La Quinta which "show the pervasiveness of sex trafficking before and well after [she] was trafficked."  (*Id.* at ¶ 51 (providing guests' observations of "big dudes standing outside of hotel room doors," "prostitutes," "hookers," "by-the-hour clientele," "perverts, drugs, gangs and prostitution").)

In addition to alleging that hotel staff observed these signs, Plaintiff alleges that the moving Defendants knew of these signs because the hotels had a "policy or protocol that required hotel staff to report suspected criminal activity including sex trafficking."  (*Id.* at ¶ 60.)  She also states that the Defendants "regular[ly] inspect[ed] … the hotel property" and "monitor[ed] … online

reviews[,] … customer surveys[,] and complaints." (*Id.* at ¶ 55). Despite being franchisors, the moving Defendants allegedly directly operated the hotels, including by "controll[ing] all details of the guest reservation, check-in, and payment processes," controlling "a brand-wide 'do not rent' system," and "restrict[ing] the ability of franchisee [sic] and staff to refuse or cancel a reservation," among other involvement. (*Id.* at ¶ 71.) Accordingly, Plaintiff alleges, the moving Defendants "knew or should have known about the trafficking of [Plaintiff]." (*Id.* at ¶ 60; *see also id.* at ¶ 72.)

On May 28, 2024, Plaintiff filed a complaint. In addition to the Defendants mentioned above, the complaint also named four "Franchisee Defendants," who allegedly own the subject Super 8. (*Id.* at ¶¶ 18–21.) The Complaint contains three causes of action, all alleging violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591, 1595. Count I alleges that Defendants are liable as perpetrators; Count II alleges that they are liable as beneficiaries, and Count III alleges that the moving Defendants are vicariously liable for the acts of their franchisees and those franchisees' subagents. (*Id.* at ¶¶ 85–95.)

## II.   <u>LEGAL STANDARD</u>

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the]

3

plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichik*, 605 F.3d 223, 229 (3d Cir. 2010). Determining whether a complaint's allegations are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[L]abels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555.

### III.   DISCUSSION

Here, Plaintiff's allegations are sufficient to withstand dismissal. The TVPRA criminalizes, in relevant part,

> knowingly … recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], obtain[ing], … maintain[ing], patroniz[ing], or solicit[ing] … a person; or … benefit[ting] … from participation in a venture which has engaged in [any of those acts] knowing, or … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion … or any combination of such means will be used to cause the person to engage in a commercial sex act.

18 U.S.C. § 1591(a). It also permits victims of such acts to seek civil remedies against "perpetrator[s]" or anyone who "knowingly benefits, or attempts or conspires to benefit … from participation in a venture which that person knew or should have known has engaged in" the acts described in § 1591. 18 U.S.C. § 1595(a). Plaintiff has adequately pled that she was a victim of sex trafficking. (Compl. ¶¶ 8, 26 ("[Plaintiff] was harbored, transported, or provided for the purpose of causing her, through force, fraud or coercion, to commit a commercial sex act."); *see Jane Doe (C.J.) v. Albert Cotugno, Jr.*, No. 23-2973, 2024 WL 4500994, at *3 n.6 (D.N.J. May 16, 2024).) As explained below, she has also adequately pled the moving Defendants' direct and vicarious liability under the TVPRA.

4

### A. Direct Liability

### i.    Beneficiary Liability

To state a claim for beneficiary liability under the TVPRA, Plaintiff must plead that Defendants "(1) 'knowingly benefit[ted] financially or by receiving anything of value, (2) from participation in a venture, (3) that [D]efendant[s] knew or should have known has engaged in sex trafficking under section 1591.'" *Cotugno*, 2024 WL 4500994, at *3 (first alteration in original) (quoting *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020)).

### a.    Knowingly Benefitted

Plaintiff states that the moving Defendants "received benefits, including increased revenue, every time a room was rented at any Wyndham locations [sic]." (Compl. ¶¶ 76–77 (alleging that moving Defendants "received financial benefits from operating the La Quinta and Super 8, including revenue generated specifically by renting rooms to traffickers").) "[R]eceiv[ing] a share of the profits from room rentals" is sufficient to establish a knowing benefit under the TVPRA. *Cotugno*, 2024 WL 4500994, at *3 (citing *A.W. v. Red Roof Inns., Inc.*, No. 21-4934, 2022 WL 17741050, at *6 (S.D. Ohio Dec. 16, 2022); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 936 (D. Or. 2020)). Plaintiff has therefore met this element for the purposes of beneficiary liability under the TVPRA.

### b.    Participated in a Venture

A "venture" under § 1595 "is an undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724–25 (11th Cir. 2021) (citing *Venture*, Black's Law Dictionary (11th ed. 2019); *Venture*, Oxford English Dictionary 520 (2d ed. 1989)). It can be either a general commercial venture or a sex trafficking venture. *See Cotugno*, 2024 WL 4500994, at *3 (citing *G.G. v. Salesforce.com*, 76 F.4th 544, 554 (7th Cir. 2023); *A.W.*, 2022 WL

17741050, at *9).  Defendants' participation also need not be directly in the TVPRA violation; general participation in a commercial venture is sufficient when the "TVPRA violation is within the scope of the venture."  *Id.* (citing *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019)).  In TVPRA cases similar to this one, allegations of "a continuous business relationship between the trafficker and the [hotel defendant] such that it would appear that the trafficker and the hotel[] have established a pattern of conduct or could be said to have a tacit agreement" are sufficient for this element.  *Id.* at *4 (finding participation in a venture based on allegations that defendant "<u>continued</u> renting rooms and providing related services to traffickers" and "ma[de] the hotel a 'favorable venue for sex trafficking'").

Here, Plaintiff alleges that the moving Defendants engaged in two ventures—one with the traffickers (Compl. ¶ 76), and one with the Franchisee Defendants (*id.* at ¶ 77).  As to the venture with the traffickers, she states that the moving Defendants "continue[d] to rent rooms to the[] traffickers despite having actual or constructive knowledge of their sex trafficking activity."  (*Id.* at ¶ 76.)  Specifically, she alleges that they

> attracted traffickers by affirmatively creating a favorable venue where access was easy, risks of interference were low, and traceability was minimal … delayed taking obvious and apparent steps to stop facilitating sex trafficking … allowed traffickers to reserve rooms using cash, which provided relative anonymity and non-traceability; … provided traffickers with access to internet services, [and] maintain[ed] … their customer base that seeks to participate in the sex trade … by not acknowledging the pervasive nature of sex trafficking in their hotels generally and the subject [hotels].

(*Id.* at ¶¶ 74, 77.)  These actions constitute participation in a venture—Defendants sought to profit (*see id.* (alleging that Defendants "declined to implement policies that would likely have the effect of reducing [their] sex-trafficking related profits")) and minimize the risks of criminal liability, "detection," and "interference" (*id.* at ¶¶ 6, 74) by creating a welcoming environment for traffickers.

Defendants dispute these allegations and argue that they could not have engaged in a venture or had a "tacit agreement" with traffickers because they were not directly involved in the hotels' operations.  (D.E. 18-1 at 10.)  Plaintiff's allegations to the contrary, including regarding the moving Defendants' control over hiring, training, and enforcement, however, are sufficient at this stage to establish a venture.  (Compl. ¶¶ 69–70; *see M.A.*, 425 F. Supp. 3d at 971 (finding venture where "Defendants rented rooms to people it knew or should have known where engaged in sex trafficking").  The moving Defendants may renew their arguments if discovery reveals that Plaintiff's allegations are unsupported, but at this stage, she has sufficiently pled a venture between the moving Defendants and the traffickers.

Plaintiff's allegations as to the venture between the moving Defendants and the Franchisee Defendants are also sufficient to withstand dismissal.  The venture involved potential profit; "both [moving] and Franchisee Defendants received financial benefits from operating" the subject hotels.  (Compl. ¶ 77.)  "'[C]ommercial* venture[s]' like running or expanding a business," even if their "primary focus is not on sex trafficking," are ventures under the TVPRA.  *See Salesforce.com*, 76 F.4th at 554 & n.8 (quoting *Doe #1*, 21 F.4th at 727 and citing cases).  Plaintiff has alleged that the Franchisee Defendants owned the subject Super 8, that the moving Defendants "participated directly in aspects of the operation" of that hotel, including by "retain[ing] control to terminate hotel staff and/or a franchising agreement."  (Compl. ¶¶ 18–21, 70.)  This business arrangement is sufficient to be considered a venture under the TVPRA.  *See, e.g.*, *D.K. v. Red Roof Inns, Inc.*, No. 2:22-CV-3786, 2024 WL 1332195, at *5 (S.D. Ohio Mar. 28, 2024), *amended on other grounds sub nom. In re Hotel TVPRA Litig.*, No. 2:21-CV-4933, 2024 WL 4945135 (S.D. Ohio Dec. 3, 2024) (deciding that franchisor defendant which "profited, failed to implement policies, and maintained expansive control over the hotel operation standards" participated in a venture with

7

franchisees).  As detailed below, Plaintiff has also pled that sex trafficking occurred within this

venture's scope.  (Compl. ¶¶ 63, 77.)

### c.  Actual or Constructive Knowledge

For the beneficiary claims to survive dismissal, Plaintiff must also plead that the moving

Defendants had actual or constructive knowledge that the ventures engaged in sex trafficking as

to her.  *Doe #1*, 21 F.4th at 725.  Constructive knowledge under the TVPRA is "that knowledge

'which one using reasonable care or diligence should have.'"  *Id.* (citing *Knowledge*, Black's Law

Dictionary (11th ed. 2019)).

Plaintiff's allegations are sufficient at this stage to establish that the moving Defendants

knew or should have known that the ventures were engaged in her sex trafficking.  She pleads that

the moving Defendants knew of the signs of sex trafficking and its pervasiveness in the hotel

industry (Compl. ¶¶ 36, 42–56), and that based on that knowledge, they should have known of sex

trafficking occurring as to her.  She alleges that the signs of her sex trafficking, enumerated above,

were obvious to hotel staff, and they should have been known to the moving Defendants through

mandatory reporting, inspections, their control over room reservations and payments, and other

operational oversight.  (*Id.* at ¶¶ 57–60, 69–70; *see Cotugno*, 2024 WL 4500994, at *4–5 (finding,

at motion to dismiss stage, that allegations of cash payments, male visitors at unusual hours, and

other signs were sufficient to establish hotel franchisor's actual or constructive knowledge as to

sex trafficking); *see also E.B. v. Howard Johnson by Wyndham Newark Airport*, No. 21-2901,

2023 U.S. Dist. LEXIS 231401, at *20–26 (D.N.J. Dec. 29, 2023).

At this stage, interpreting the complaint most favorably to Plaintiff, these allegations are

sufficient to establish that the moving Defendants at least should have known that the ventures

were engaged in sex trafficking as to Plaintiff.  Accordingly, the motion to dismiss as to the moving Defendants' beneficiary liability must be denied.

### ii.    Perpetrator Liability

Dismissal of Plaintiff's claim for direct perpetrator liability is also premature at this stage.[2] To be liable as a perpetrator, as relevant here, a defendant must have knowingly recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited a person knowing or in reckless disregard of the fact that means of force, threats of force, fraud, coercion or any combination thereof will be used to cause the person to engage in a commercial sex act.[3]  18 U.S.C. § 1591(a)(1); *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-CV-00672-KJM-JDP, 2023 WL 3456619, at *2 (E.D. Cal. May 15, 2023).   Plaintiff pleads sufficient facts to support that the moving Defendants harbored her knowingly or in reckless disregard of the fact that she was being trafficked.  She alleges that they were sufficiently involved in the hotels' day-to-day operations to rent her a room.   (Compl. ¶ 71; *see Doe v. Hotels*, No. 6:23-CV-1012-JSS-LHP, 2024 WL 2955728, at *6 (M.D. Fla. June 12, 2024) (defining "to 'harbor'" as "to give shelter or refuge to" and denying motion to dismiss as to perpetrator liability of hotel that "provide[d]" traffickers a

---

[2] Defendants argue that Plaintiff has conceded her direct perpetrator liability claim by not addressing it in her opposition to the motion to dismiss.  (D.E. 31 at 1 & n.1.)  While Plaintiff's opposition does not include a specific section for direct perpetrator liability, it does maintain some of her arguments supporting perpetrator liability, including that the moving Defendants "participated directly in renting rooms at the hotel [and] continued renting rooms to traffickers, including [Plaintiff's]," as well as their knowledge of her trafficking.  (D.E. 26 at 4.)  Because the claim was adequately pled in the complaint, is closely related to the other claims, and will depend on factual context best developed later, it survives this motion to dismiss.  *See Cotugno*, 2024 WL 4500994, at *5.

[3] There is also a possible interpretation of § 1591 under which "perpetrator liability" applies to someone who benefits from participation in a venture with knowledge or in reckless disregard of the fact that the venture engages in sex trafficking in violation of § 1591(a)(2).  *See Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 167 n.3 (S.D.N.Y. 2019) ("[A] perpetrator can be either a direct violator under … § 1591(a)(1), or a participant under … § 1591(a)(2).").  Consistent with this interpretation, Plaintiff's perpetrator liability claim is based in part on Defendants' benefitting from its participation in a venture.  (Compl. ¶ 86(b).)  Plaintiff's allegations, supported in her opposition brief, that the moving Defendants benefitted from a venture that engaged in sex trafficking also weigh against dismissing the perpetrator liability claim at this stage.

9

room where victim "could be trafficked for profit").)  Plaintiff has also alleged the requisite knowledge: that the moving Defendants 1) were aware of the signs and pervasiveness of sex trafficking in hotels, 2) monitored the online reviews of their hotels discussing possible sex trafficking activity, and 3) would have received reports, which hotel staff were required to submit, regarding the obvious signs of Plaintiff's being trafficked.  (Compl. ¶¶ 42–60, D.E. 26 at 3–4.)

As with the other claims, if discovery reveals that the moving Defendants lacked the requisite knowledge or involvement, they will not be held liable as perpetrators.  At this stage, however, reading the complaint in Plaintiff's favor, the allegations sufficiently state that the moving Defendants harbored Plaintiff knowingly or in reckless disregard for the fact that she would be caused to engage in a commercial sex act through force, fraud, or coercion.  *See Cotugno*, 2024 WL 4500994, at \*5 (recognizing that alleged "direct liability … rest[ed] on the notion that [franchisor] was intimately involved in [hotel] operations" and reserving "factual question" of dispute over franchisor's involvement in hotel operations until after motion to dismiss).  Accordingly, the motion to dismiss must be denied as to perpetrator liability.

### B.  Vicarious Liability

Finally, Plaintiff alleges that the moving Defendants are "vicariously liable for the TVPRA violations of [their] franchisees and the subagents of [those] franchisee[s]."  (Compl. ¶ 95.)  For one party to be vicariously liable for another's conduct, those parties must have an agency relationship.  "An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent."  *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1434 (3d Cir. 1994) (citing *Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 79 (N.J. 1993)).  In hotel TVPRA cases similar to this one,

> [t]he question of whether a franchisor has retained sufficient control to establish an
> agency relationship depends entirely on the facts of each individual case, including

10

the extent of the control as defined by the franchise agreement, and the actual practice of the parties. The hallmark of an agency relationship is that the principal has the right to control the manner in which the agent performs his duties.

*Doe (P.B.) v. Wyndham Hotels & Resorts, Inc.*, No. CV 23-1493 (ZNQ) (RLS), 2023 WL 8890229, at *5 (D.N.J. Dec. 26, 2023). Vicarious liability claims have withstood motions to dismiss based on allegations that franchisors controlled "the mode and manner of the work [and] employee training," imposed "standardized and strict rules of operations, … controlled pricing and reservations" and "regularly conducted inspections." *Id.*; *see A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 196 (E.D. Pa. 2020); *Cotugno*, 2024 WL 4500994, at *6 (holding allegations that franchisor "shared profits, standardized employee training and rules of operations, controlled pricing and reservations, regularly conducted inspections, provided operational support, and had the right to terminate any franchisee … that failed to comply with [franchisor's] requirements" sufficient to plead vicarious liability).

Plaintiff makes similar allegations here. She pleads that the moving Defendants "subjected Franchisee Defendants to detailed standards and requirements regarding the operation of the subject [hotels] through the franchising agreements, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, and expectations." (Compl. ¶ 79.) The moving Defendants allegedly "controlled the means, methods, and tools Franchisee Defendants used" at the subject hotels and imposed standards "cover[ing] virtually all aspects of hotel operations, including internal operating functions." (*Id.* at ¶ 80.) Plaintiff also alleges that the moving Defendants mandated "training programs" for franchised hotel staff, "dictat[ed] the content of that training," "established detailed job descriptions for all positions in its La Quinta and Super 8 properties and drafted numerous, detailed policies that … dictated which positions must perform which tasks and how they must do so," "controlled channels for guests to report

11

complaints or provide feedback regarding the subject [hotels]," "conducted frequent and unscheduled inspections of La Quinta and Super 8 properties, including the subject [hotels]," and retained the right to terminate franchising agreements "if franchisees violated any of the [moving] Defendants'" rules. (*Id.* at ¶ 81.) These allegations are sufficient to establish at this stage that the Franchisee Defendants were the moving Defendants' agents, and the moving Defendants may be considered vicariously liable for the Franchisee Defendants' actions.

The moving Defendants argue that Plaintiff has failed to plead a TVPRA violation by the Franchisee Defendants that can be imputed to the moving Defendants. (D.E. 18-1 at 19.) Plaintiff's allegations as to the Franchisee Defendants' liability are similar to those underlying the moving Defendants' liability, and they are also sufficient to survive dismissal. Plaintiff states that the Franchisee Defendants "knew or [were] willfully blind to" Plaintiff's trafficking and that hotel staff observed specific signs of sex trafficking as to Plaintiff within the scope of their employment. (Compl. ¶¶ 57–58, 63–65.) They nonetheless continued renting rooms for her trafficking and "benefi[t]ted from continued association with [Plaintiff's] traffickers." (*Id.* at ¶¶ 63–64.) At this stage, Plaintiff has adequately pled that the Franchisee Defendants violated the TVPRA and that the moving Defendants can be vicariously liable for those violations. As above, factual disputes as to the moving Defendants' involvement in hotel operations are best reserved for a later stage in this litigation.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **DENIED**. An appropriate order follows.

Case 2:26-cv-01225-JFW-MAR    Document 38    Filed 01/30/25    Page 13 of 13    Page ID
#:259

/s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON, U.S.D.J.**


Orig:    Clerk
cc:      José R. Almonte, U.S.M.J.
         Parties

13